1

2

3   **E-FILED on** ___7/9/07___

4

5

6

7   IN THE UNITED STATES DISTRICT COURT

8   FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   SAN JOSE DIVISION

10

11   MK BALLISTICS SYSTEMS and MICHAEL          No. C-07-00688 RMW
     KEITH,
12
                    Plaintiffs,
13                                               ORDER GRANTING IN PART AND
          v.                                     DENYING IN PART DEFENDANTS'
14                                               MOTION TO DISMISS
     WILLIAM SIMPSON, JOHN SARSFIELD,
15   and COUNTY OF SAN BENITO, et al.            **[Re Docket No. 3]**

16                    Defendants.

17

18

19       Plaintiffs MK Ballistics Systems ("MK") and Michael Keith filed a civil action before this

20   court under 42 U.S.C. § 1983 against defendants John Sarsfield, District Attorney for the County of

21   San Benito; William Simpson, an investigator for the District Attorney; and the County of San

22   Benito ("County").  The County, joined by defendants Sarsfield and Simpson, moves to dismiss the

23   action.  Plaintiffs oppose the motion.  The court has read the moving and opposing papers and

24   considered the arguments of counsel.  For the reasons stated below, the court grants in part and

25   denies in part defendants' motion to dismiss and stays the case.

26                                **I.  BACKGROUND**

27       Defendant William Simpson was responsible for investigating the operations of MK.  After a

28   preliminary investigation, Simpson obtained a court-approved search warrant to search MK's

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

premises in connection with the California Department of Toxic Substances Control.  During the investigation, Simpson allegedly discovered containers of hazardous materials, for which MK did not hold a hazardous waste permit.

Based on the results of Simpson's investigation, defendant John Sarsfield filed a complaint against MK and Keith in the Superior Court of the State of California, County of San Benito, seeking, *inter alia*, civil penalties for violations of California Health and Safety Code sections 25188, 25189, 25189.2 and 25201 and California Business and Professions Code section 17200-17208 ("underlying case").[1]  MK and Keith answered by denying the allegations set forth in the state court and challenging the search warrant obtained by Simpson. This underlying case is still ongoing in state court.

On February 2, 2007, MK and Keith filed the instant action in this court under 42 U.S.C. § 1983 against Sarsfield, Simpson, and the County.  Plaintiffs allege that Simpson violated plaintiffs' civil rights to be free of unreasonable search and seizure by misrepresenting facts in his affidavit to obtain the search warrant and that Sarsfield and the County negligently hired, retained, and appointed Simpson as a district attorney investigator in spite of his allegedly being ineligible to hold the position.  They also allege that Sarsfield and the County failed to remove Simpson from the position, take disciplinary action against Simpson, or provide redress for Simpson's conduct.  The County, joined by Sarsfield and Simpson, moves to dismiss the action on two grounds: (1) that the suit is barred by various doctrines of immunity and (2) that *Heck v. Humphrey*, 512 U.S. 477 (1994), prevents MK and Keith from proceeding with this action until the underlying action has been concluded.

## II.  ANALYSIS

### A.     Eleventh Amendment Immunity

The County argues that the Eleventh Amendment bars plaintiffs' complaint because Sarsfield and Simpson are representatives of the state.  While the Eleventh Amendment bars suits against states, it does not bar suits against cities and counties, which are not arms of the state, or their

---

[1]  The court grants defendants' request for judicial notice of the complaint and answer filed in the underlying action.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

officials.  *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  Thus, the question is whether Sarsfield and Simpson were county or state actors for purposes of the present action.

The question of whether a state instrumentality acts for the county or as an arm of the state, and thus as "one of the United States" within the meaning of the Eleventh Amendment, is ultimately a matter of federal law, but it must be answered by considering state law that defines the entity's character.  *See Regents of the University of California v. Doe*, 519 U.S. 425, 429 n.5 (1997).  For a government official, the analysis does not examine the his role "in some categorical, 'all or nothing' manner'" but rather asks whether he acts "for the local government in a particular area, or on a particular issue."  *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997); *see also Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000).

In *Weiner*, the Ninth Circuit considered whether a district attorney acts for the county or the state when deciding to prosecute someone.  210 F.3d at 1026.  Following the Supreme Court's analysis in *McMillian*, the Ninth Circuit looked to California's constitution, statutes, and case law. *Id.* at 1029.  First, it found that California's constitution lists district attorneys as county officers elected by the county, Cal. Const. art. XI, § 1(b), but provides for direct supervision by the Attorney General, an officer of the state, who can require them to make reports concerning investigation, detection, prosecution, and punishment of crime and can assume all the powers of a district attorney when it is his opinion that state law is not being adequately enforced in any county, Cal. Const. art. V, § 13.  *Weiner*, 210 F.3d at 1029.  Turning to state law, the court again found "provisions that weigh both for and against concluding that the district attorney is a state officer."  *Id.*  In favor of the conclusion, it found that (1) all suits are conducted under the name of the state of California, (2) county authority to review a district attorney's conduct specifically excludes interference with their "'investigative and prosecutorial function,'" (3) the Attorney General has direct supervision over district attorneys, can require written reports, and can take full charge of any investigation or prosecution, and (4) the Attorney General can call district attorneys into conference to discuss the duties of their office.  *Id.* (citations omitted).  Against the conclusion, it found that

> (1) district attorneys are listed as county officers; (2) counties set district attorneys' salaries; (3) district attorneys must be registered to vote in their respective counties; (4)

**United States District Court**
For the Northern District of California

1  counties supervise the district attorneys' conduct and use of public funds; and (5) district
2  attorneys can be removed from office following the same procedures as applied to
   district, county, and city officers . . . .

3  *Id.* at 1029-30 (citations omitted).  The court discounted these latter factors, noting that *McMillian*

4  had found them not to be controlling, and held that the district attorney had acted for the state.  *Id.* at

5  1030.  The court also noted that "[a]ll relevant California cases . . . have held that district attorneys

6  are state officers for the purpose of investigating and proceeding with criminal prosecutions."  *Id.*

7      Plaintiffs argue that the present case is distinguishable because it involves a district attorney

8  in his investigative role, not his role as a prosecutor.  In support of this argument, plaintiffs draw an

9  analogy to cases addressing whether a prosecutor's investigatory, as opposed to prosecutorial,

10 conduct is entitled to absolute or qualified immunity.  *See, e.g.*, *Buckley v. Fitzsimmons*, 509 U.S.

11 259, 275-76 (1993).  However, the analogy is inappropriate because the test for absolute immunity is

12 different from that for sovereign immunity.  The test for absolute immunity involves a "'functional

13 approach,' which looks to 'the nature of the function performed, not the identity of the actor who

14 performed it.'"  *Id.* at 269 (citations omitted).  The court then asks whether that function fits "within

15 a common-law tradition of absolute immunity."  *Id.*  In contrast, sovereign immunity depends on

16 how a particular state defines a certain office and the oversight of that office; the same function can

17 be performed by a state actor or county actor in different instances.

18     *McMillian* does require that an official be classified as a state or county actor based on the

19 particular function he is performing in a certain case.  In that sense, *Buckley* at least suggests that

20 there may be a distinction between investigative and prosecutorial conduct.  Upon closer

21 examination, however, this distinction proves unviable.  With the exception of prosecuting suits

22 under the name of the state of California, all of the constitutional and statutory provisions the Ninth

23 Circuit considered in *Weiner* apply to both investigations and prosecutions.  *See also Brewster v.*

24 *County of Shasta*, 275 F.3d 803, 810 (9th Cir. 2001).  In distinguishing *Weiner* to find that a *sheriff*

25 acted for the county in conducting investigations, the court in *Brewster* drew the line not between

26 investigations and prosecutions but between sheriffs and district attorneys.  *Id.*  It found that

27 California law "establishes a closer relationship between the Attorney General and district attorneys

28 than between the Attorney General and county sheriffs," stressing that the Attorney General could

**United States District Court**
For the Northern District of California

"take full charge of any *investigation or prosecution*, in which case [he] would have all the powers of a district attorney." *Id.* (emphasis added) (citing Cal. Const. art. V, § 13 and Cal. Gov. Code § 12550). *Brewster* thus implicitly accepts the proposition that *Weiner* applies to district attorneys acting in both investigations and prosecutions.

Because under *Weiner* Sarsfield and Simpson were acting for the state in their investigation and prosecution of MK, plaintiffs' suit against the County is barred by the Eleventh Amendment. However, the Eleventh Amendment does not bar plaintiffs' claim against Sarsfield and Simpson in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).  Sarsfield and Simpson argue that they cannot be sued in their individual capacities because at all times relevant to this lawsuit they were acting for the state.  However, the *Hafer* court rejected the idea that 42 U.S.C. § 1983 liability depends on the capacity in which the official acted rather than the capacity in which he is sued.  *Id.* at 27.  It was precisely because the defendant in *Hafer* acted in her official capacity that her actions were under color of state law within the meaning of the statute.  *Id.* at 27-28.  The court thus found that this same official authority, standing alone, could not also shield the defendant from suit.  *Id.* at 28, 31.

### B.    Absolute Prosecutorial Immunity

Sarsfield and Simpson argue that absolute immunity bars plaintiffs' complaint because their actions were associated with judicial proceedings and were undertaken in their role as advocates for the state. *See Buckley*, 509 U.S. at 273.  Absolute immunity from 42 U.S.C. § 1983 claims developed from a tradition of common-law immunity from tort claims for prosecutors performing official functions. *Kalina v. Fletcher*, 522 U.S. 118, 124-25 (1997).  Like its common-law origins, the doctrine is motivated by an "interest in enabling [prosecutors] to exercise independent judgment when 'deciding which suits to bring and in conducting them in court'" and in protecting the judicial process. *Id.* at 125 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976)).  "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

In *Burns*, the court held that a prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing are protected by absolute

immunity." 500 U.S. at 492. *Kalina* went further by holding that the preparation and filing of documents to obtain an arrest warrant were also part of an advocate's function and thus protected by absolute immunity. 522 U.S. at 129; *see also Imbler*, 424 U.S. at 431 n.33 ("[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom."). However, the *Kalina* court found that in personally attesting to the truth of facts in a Certification for Determination of Probable Cause, the defendant performed the function of a complaining witness, who did not enjoy absolute immunity at common law. 522 U.S. at 129-31.

> [The defendant's] drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court[,] . . . . even the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required the exercise of the judgment of the advocate.

*Id.* at 130. However, "[t]estifying about facts is the function of the witness, not of the lawyer." *Id.* Thus, while much of the conduct involved in preparing a declaration in support of an arrest warrant is entitled to absolute immunity, the issue ultimately turns on a fact-specific, functional analysis.

Plaintiffs argue that absolute immunity does not apply to Sarsfield and Simpson because the facts of this case are analogous to those in *Kalina*. Plaintiffs' central allegation is that Simpson made misrepresentations in the affidavit he submitted to obtain the search warrant. Compl. ¶ 10; Pls. Supp. Br. Regarding the Eleventh Amendment and Absolute Prosecutorial Immunity at 2:9-11. In making these representations Simpson, like the defendant in *Kalina*, performed the function of a complaining witness and not that of an advocate for the state. Against this conclusion defendants cite broad language in *Burns* about the judicial nature of obtaining a search warrant, but they have not shown that the specific function Simpson performed is entitled to immunity.

## C. State Law Immunity

Simpson argues that state law immunity bars plaintiffs' complaint because the alleged conduct was within the scope of his employment. California law provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6. However, this provision does not bar claims under 42 U.S.C. §

United States District Court
For the Northern District of California

1983.[2]  *County of L.A. v. Superior Court*, 78 Cal. App. 4th 212, 227-29 (2000) (finding that section 821.6, as a state law "ceiling on damages[,] is unenforceable in an action brought under section 1983" because of the federal interest in uniformity of damages); *Kaplan v. Labarbera*, 58 Cal. App. 4th 175, 180 (1997) ("State immunity statutes do not offer protection from actions brought under 42 United States Code section 1983."); *see also Gensburg v. Miller*, 31 Cal. App. 4th 512, 518-19 (1994) (finding that "any state or common law causes of action are barred by section 821.6" but one "must look to federal law to determine the scope of immunity of governmental officials from a section 1983 suit"); *Elene H. v. County of L.A.*, 220 Cal. App. 3d 1445, 1451 (1990) (same).

**D.   Applicability of *Heck***

In the alternative, defendants ask the court to dismiss this case in light of *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that

> in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id.* at 486-87 (citation omitted).  An action under 42 U.S.C. § 1983 seeking damages for an alleged illegal search and seizure of evidence upon which criminal charges are based is barred by *Heck* until criminal charges have been dismissed or the conviction has been overturned.  *Harvey v. Waldron*, 210 F.3d 1008, 1015-16 (9th Cir. 2000).  This rule "avoid[s] the potential for inconsistent determinations on the legality of a search and seizure in the civil and criminal cases" and is consistent with the strong judicial policy, emphasized by the *Heck* court, in favor of preserving consistency and finality and preventing collateral attacks on convictions.  *Id.* at 1015.  However, as plaintiffs point out, there have been no criminal convictions in the underlying case, nor are there criminal charges pending, as the underlying action is for civil penalties under the California Health and Safety Code and the California Business and Professions Code.

---

[2]  Defendants have not disputed the characterization of this lawsuit as a claim under section 1983.

1    Although neither the court nor the parties were able to find case law applying *Heck* in a civil

2    context, it seems logical that *Heck*'s rationale would extend to these circumstances.  Even assuming

3    that *Heck* is not directly applicable, the court finds it appropriate to stay the present action so as not

4    to risk a result that would be inconsistent with the decision of the state court in the underlying

5    action.

6                                              **III.  ORDER**

7    For the foregoing reasons, the court grants in part and denies in part defendants' motion to

8    dismiss the complaint.  The County is dismissed as a party.  The motion to dismiss is denied as to

9    defendants Sarsfield and Simpson.  The case is hereby stayed pending the resolution of the

10    underlying state court action.

11

12

13    DATED:      7/6/07                          _Ronald M Whyte_

14                                              RONALD M. WHYTE
                                              United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS—No. C-07-00688 RMW
MAG/LJP                                              8

1   **Notice of this document has been electronically sent to:**

2   **Counsel for Plaintiff:**

3   William L. Marder                bill@polarislawgroup.com

4   **Counsel for Defendants:**

5   Stephan A. Barber                sbarber@ropers.com
    Nancy M. Battel                  nancy@battelaw.com
6   Christian B. Nielsen             cbn@robinsonwood.com

7

8   Counsel are responsible for distributing copies of this document to co-counsel that have not
    registered for e-filing under the court's CM/ECF program.

9

10

11  **Dated:**          7/9/07                          /s/ MAG
                                                    **Chambers of Judge Whyte**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California